IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| TIMOTHY GREGORY HOLMES, | No C 07-1172 VRW |
| Petitioner, | |
| v | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| PL VASQUEZ, Warden, | |
| Respondent. | |

Petitioner Timothy Gregory Holmes, an incarcerated state prisoner, seeks a writ of habeas corpus under 28 USC §2254. For the reasons stated herein, the petition is DENIED.

On February 27, 2003, a jury found petitioner guilty of first degree murder and personal use of a firearm causing death in violation of California Penal Code sections 187 and 12022.53(d). Doc #21: Clerk's Transcript (CT) vol II at 349. On April 2, 2003, the trial court sentenced petitioner to fifty years to life in

prison. Id at 365; <u>People v Holmes</u>, 2004 Cal App Unpub Lexis 4640, at *2 (Cal App 2004).

On direct appeal, the California court of appeal affirmed the judgment and the California Supreme Court denied review. <u>People v Holmes</u>, 2004 Cal Lexis 6481 (Jun 14, 2004); <u>People v Holmes</u>, 2004 Cal App Unpub Lexis 4640; Doc #21: Order Denying Ptn for Review filed Jul 14, 2004.

Petitioner filed a petition for a writ of habeas corpus in the Fresno County superior court; the superior court issued a four-page order denying the petition. In re Timothy Gregory Holmes, No. 05CRWR677518 (CA, Superior Ct Fresno County, January 30, 2006); see Doc #21: Decision Denying Ptn for Writ of Habeas Corpus. The California court of appeal and California Supreme Court summarily affirmed. Doc #21: Petition for Writ of Habeas Corpus, California Supreme Court, Exh 1; Order Denying Ptn for Writ of Habeas Corpus (Jun 13, 2007). In his state habeas proceedings, petitioner presented substantially the same claims as those stated herein.

On August 9, 2007, petitioner filed a federal petition for a writ of habeas corpus under 28 USC section 2254. Doc #1. The court determined the petition stated cognizable claims for relief and ordered respondent to show cause why a writ of habeas corpus should not be granted. Doc #6. Respondent has filed an answer and petitioner has filed a traverse. Doc #10; Doc #14.

I

28 USC section 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

2

determination of a factual issue made by a State court shall be presumed to be correct." Accordingly, pertinent factual findings as set forth in the court of appeal's opinion on direct appeal (People v Holmes, 2004 Cal App Unpub Lexis 4640, at *2-11) are set forth below.

> Holmes and his wife, Holly, were married approximately 13 years prior to March 9, 2002, when Holmes fatally shot Holly. In early 2002, Holmes confirmed his suspicions that Holly was having an affair with a co-worker, whom he subsequently identified as Kent Kliewer, when he secretly taped a telephone call between Holly and Kliewer.
>
> * * *
>
> On February 9, 2002, Holly called her mother [Joan Hansken] and told her that Holmes called the police and told them she was trying to shoot him with a gun.
>
> On another occasion Holly called her mother and told her that Holmes spit [sic] in her face and put gum in her hair.
>
> * * *
>
> [On February 24, 2002,] Holmes called Hansken and told her that Holly had slapped him and that she was on her way over to Hansken's house. When Holly arrived, she told Hansken that Holmes had placed a gun to her head and wanted her to go into the bedroom. However, before they got there Holmes jumped on Holly's back and began choking her until she almost passed out. Holly did not return to live with Holmes after that night.
>
> * * *
>
> On the morning of March 9, 2002, Hansken accompanied Holly to pick up her dog. Upon seeing them, Holmes said, "I thought you were coming by yourself." Hansken and Holly soon left, but without the dog.
>
> Hansken asked Holly not to go back for the dog, but if she did, to call her once she left Holmes's house. At about 12:45 pm, Holmes called Hansken and told her that Holly had just left. A while later Holmes called Hansken again and said he was sorry. When Hansken asked for Holly, Holmes stated that she was on the kitchen floor.
>
> * * *
>
> Dennis Martin, Holmes's cousin, testified that sometime in February 2002, Holmes called him. Holmes was upset and

depressed and told Martin that he broke Holly's stereo and that he had rented a car to follow Holly.

On March 9, 2002, at approximately 12:40 pm Holmes called Martin and told him that he had shot Holly. When Martin told him he needed to call the police Holmes told him not to. Holmes said he was going to kill himself so that he would not go to prison.

Martin arrived at Holmes's house within five minutes and saw Holly lying on the kitchen floor. Holmes did not have any blood on him and it did not appear that he had given any aid to Holly. Martin told Holmes that they had to call 911 but Holmes refused. After Martin called Holmes's father, Holmes told him to call 911 and gave him a .22-caliber handgun. Holly was still alive at that point.

An autopsy disclosed that Holly died from a single gunshot wound to the back of the head that was inflicted with the gun muzzle almost touching her head.

* * *

Holmes [testified he] was depressed and had trouble sleeping. On March 8, 2002, he decided to kill himself in front of Holly to show her how much she hurt him.

On March 9, 2002, when Holly went to the house with her mother he told her to come back later because he wanted to be alone with Holly when he killed himself. When Holly came back by herself he asked her to pray for him. After she stated that he was scaring her, he grabbed a .22-caliber handgun, cocked it, and locked the front door. When Holly ran toward the door, Holmes grabbed her with his left hand while holding the gun in his right hand and said "Holly I want you to see this." As he put the gun to his head Holly would not look at him and squatted down. Holmes first grabbed her with his left hand and as he grabbed her with his right hand, the gun went off striking Holly in the head. At that point, Holmes's mind went blank and the next thing he remembered was Martin at his front door.

II

A federal court may not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

4

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 USC § 2254(d).

"Contrary to" clearly established federal law requires a finding that the state court's conclusion of law is contrary to Supreme Court precedent or the state court's decision differs from Supreme Court precedent on a set of materially indistinguishable facts. See Williams v Taylor, 529 US 362, 412-13 (2000). A state court "unreasonably appli[es]" federal law if it identifies the correct governing legal principle from Supreme Court precedent "but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id at 409.

Where an appellate court affirms a habeas decision without opinion, a district court must "look through" the appellate court's unexplained decision to the last reasoned decision. Ylst v Nunnemaker, 501 US 797, 805-06 (1991). For most claims in this case, the last reasoned decision is the Fresno County superior court's habeas decision.

To prevail on a claim of ineffective assistance of counsel (IAC), a habeas petitioner must show: 1) his counsel's performance was unreasonable under prevailing professional standards; and 2) a reasonable probability of different results but for his counsel's errors. Strickland v Washington, 466 US 668, 687-91 (1984). Petitioner must show that counsel's performance fell below "an objective standard of reasonableness under prevailing professional

5

norms." Id at 687-88. Judicial scrutiny of counsel's performance must be "highly deferential" resulting in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id at 689. Strategic choices made after less than complete investigation are reasonable "to the extent reasonable professional judgments support the limitations on investigation." Id at 691.

The choice of expert is one of trial strategy and deserves "a heavy measure of deference." <u>Turner v Calderon</u>, 281 F3d 851, 876 (9th Cir 2002). Counsel has no duty to contact other experts if she believes those consulted are qualified. <u>Babbitt v Calderon</u>, 151 F3d 1170, 1174 (9th Cir 1998). If counsel's experts do not advise that additional experts are required, counsel need not independently seek additional experts. Id.

In analyzing prejudice, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Strickland</u>, 466 US at 695. "Even if no single error were [sufficiently] prejudicial, where there are several substantial errors, their cumulative effect may nevertheless be so prejudicial as to require reversal." <u>Alcala v Woodford</u>, 334 F3d 862, 893 (9th Cir 2003) (alteration in original).

"A habeas petitioner is entitled to an evidentiary hearing as a matter of right on a claim where the facts are disputed if two conditions are met: (1) the petitioner's allegations would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." <u>Jones v Wood</u>, 114 F3d 1002, 1010 (9th Cir 1997).

6

III

Petitioner seeks habeas relief under 28 USC § 2254 based on four IAC claims. Petitioner claims that his trial counsel failed to conduct adequate pretrial investigation and failed to object to allegedly inadmissible evidence at trial. Petitioner also claims that appellate counsel failed to appeal the allegedly improper admission of hearsay evidence at the trial proceedings.

Petitioner first claims that his trial counsel failed to investigate reasonably and thus failed to discover that: (1) trial counsel could have introduced a defense of diminished mental or physical capacity because petitioner's blood test results showed high levels of Valium (a brand name for diazepam) and his physician had recently doubled petitioner's Valium prescription; (2) trial counsel could have objected to the introduction of evidence that a stun gun was found at the crime scene because no evidence of stun gun use was found on the victim; and (3) trial counsel could have introduced additional evidence of the murder weapon's capacity for accidental discharge and the bullet's trajectory to corroborate petitioner's defense. Doc #1-2 at 22. Petitioner requests an evidentiary hearing to develop the evidentiary record relating to the adequacy of trial counsel's investigation. Id at 16-17.

Petitioner also claims that his trial counsel was ineffective for failing to object to the prosecution's theory that petitioner used a stun gun in his wife's murder and to the admission of evidence that he did not commit suicide, abused his wife and had been committing disability fraud. Id at 38.

Petitioner next claims that his appellate counsel was ineffective for failing to appeal the admission of hearsay evidence

that petitioner threatened and abused his wife. Id at 49.

Finally, petitioner claims that the accumulation of errors by both trial and appellate counsel amounts to IAC. Id at 55.

A

The Fresno County superior court found petitioner did "not sustain[] his burden that his trial counsel failed to provide the reasonably effective assistance required under Strickland." In re Timothy Gregory Holmes, No 05CRWR677518, slip op at 2. In support, the superior court only noted that "valid tactical explanations have been provided for trial counsel's actions." Id. In order to apply the section 2254(d) standard applicable to federal habeas review, the court must therefore examine the tactical explanations for counsel's actions appearing in the record.

1

Petitioner claims his trial counsel was ineffective because he did not develop and present defenses of voluntary and involuntary intoxication at trial. Because the court finds that trial counsel reasonably investigated these defenses, it finds this particular claim to be without merit.

Respondent counters that trial counsel rejected the intoxication defenses for strategic reasons. Doc #10 at 24. In particular, trial counsel believed a defense theory under which petitioner was intoxicated prior to the killing could not explain other incriminating evidence. Doc #21: Lodged Exhibits vol I to the Return to Writ of Habeas Corpus filed September 19, 2005 (LE vol I Ret) at 11 (Kinney Decl at ¶ 12).

8

Petitioner does not dispute this, but instead attacks the reasonableness of trial counsel's investigation into the alternative intoxication defenses, specifically contending that counsel should more thoroughly have researched whether Valium might have affected petitioner's mental state at the time of the crime and should have hired a more qualified expert to advise him on the effects of Valium. But for these failures, petitioner contends, trial counsel would have used one or both of the intoxication defenses to obtain an acquittal. Doc #1-2 at 24, 26-27. But evidence in the record establishes that trial counsel did investigate petitioner's Valium use: according to declarations by both trial counsel and his medical expert, Dr P Berg, trial counsel "sought [Berg's] opinion on what effect, if anything, [the] amount of Valium [in the toxicology report] would have on petitioner's defense" and Berg informed trial counsel that "he felt the level of Valium in the petitioner's system was not enough to show he was trying to overdose." LE vol I Ret at 7 (Berg Decl ¶¶ 6-7) & 10 (Kinney Decl ¶¶ 9-10). Trial counsel, moreover, explained that he believed a defense theory under which petitioner was under the influence of Valium failed to explain other incriminating evidence: "Being under the influence [on the day of the murder] would not have explained [petitioner's] prior actions of wanting to get Holly to his house alone. * * * It would not have explained why he had a loaded gun." Id at 11 (Kinney Decl ¶ 12).

Counsel may reasonably reject further investigation of an alternative defense if she believes the defense should be avoided, no matter what the investigation might disclose. <u>Layton v United States</u>, 855 F2d 1388, 1418 (9th Cir 1988). An investigation is not unreasonable simply because it does not discover all favorable

9

information; rather, the critical question is whether "reasonable professional judgments support the limitations on investigation." Strickland, 466 US at 691.

Because trial counsel believed an intoxication defense would not be viable, reasonable professional judgments support his investigation of how Valium might have affected petitioner's mental state at the time of the crime. Strickland, 466 US at 691.

Petitioner's IAC claim also rests on trial counsel's choice of expert. Doc #1-2 at 30. Berg, a licensed California psychologist for over 40 years, practices forensic psychology and approximately 60% of his patients are on psychotropic medications. LE vol I Ret at 6 (Berg Decl ¶¶ 1-4). Petitioner offers the testimony of Dr S Miles Estner to challenge Berg's qualifications. Doc #14 at 23 (citing LE vol I Ptn at 12 (Estner Decl at ¶¶ 47) ("Dr Berg is not qualified to evaluate the chemical interaction and ultimate scientific evaluation of Mr Holmes' state of mind as a result of having [Valium] within his bloodstream.")). Although Estner's analysis may differ from Berg's, trial counsel "cannot be deemed ineffective because, with the benefit of hindsight, we now determine that other * * * expert witnesses may have been a better choice." Turner, 281 F3d at 876 (citing Strickland, 466 US at 689-90). Because trial counsel believed Berg to be qualified and Berg did not advise trial counsel that additional experts were required, LE vol I Ret at 10 (Kinney Decl at ¶¶ 7, 10), he was not ineffective for failing to contact other experts. Babbitt, 151 F3d at 1174.

Because the court agrees with the superior court that "valid tactical explanations have been provided for trial counsel's actions," it finds no basis for holding that the superior court, in

10

denying the Valium-related claims, unreasonably applied clearly established federal law. 28 USC § 2254(d)(1). No evidentiary hearing is warranted; this claim is DENIED.

2

Petitioner claims that trial counsel was "ineffective by not independently and thoroughly investigating the issue of the stun gun use since the prosecution claimed that Petitioner used the stun gun to disable his wife." Doc #1-2 at 35. The superior court found "Petitioner has not sustained his burden that his trial counsel failed to provide the reasonably effective assistance required under Strickland for this claim." In re Timothy Gregory Holmes, No 05CRWR677518, slip op at 2.

Petitioner contends that if trial counsel had further investigated whether petitioner had used the stun gun in the commission of the crime, he would have been able to submit additional evidence to prevent the introduction of evidence that the stun gun was found at the scene of the crime. Doc #1-2 at 35. In this regard, petitioner contends the stun gun was inadmissible because no evidence could be offered to lay a foundation that the stun gun had been used in the murder. Doc #1-2 at 35.

Petitioner misstates the role the stun gun played in the prosecution's case. Petitioner contends that a disputed fact "was whether he was trying to commit suicide and accidently shot his wife, or whether he had used a stun gun to disable his wife and then shot her, execution style." Doc #1-2 at 35. The prosecutor, in her closing, admitted that this was not a fact she could prove beyond a reasonable doubt. RT vol VIII at 2165-66. In reality, the critical dispute was whether the shooting was premeditated or accidental.

11

The prosecutor instructed the jury that the relevance of the stun gun was its propensity to show premeditation. Id ("You don't have to agree with [the prosecution's stun gun] theory. You just have to agree that he thought about what he was doing, intended to kill her, and he did it with premeditation and deliberation.").

Even if trial counsel had objected to the admission of the stun gun evidence and the trial court had granted an in limine hearing to decide if sufficient foundation existed, the stun gun evidence could still have been admitted as probative of premeditation. Cal Evid Code § 351. In Hebner v McGrath, a prisoner claimed IAC because of counsel's failure to object to evidence showing a propensity to commit a crime. 543 F3d 1133, 1137 (9th Cir 2008) (citing Cal Evid Code § 1108). The court rejected this argument, holding that failure to object to the admissibility of evidence is not IAC if the same evidence is admissible under an alternative provision of the Evidence Code. Id. In Hebner, the disputed evidence would have been admissible as probative of a common plan or intent. Id (citing Cal Evid Code § 1101(b)).

Petitioner also argues that he "was prejudiced by the presentation of a highly prejudicial and unsupported 'theory' that presented him as a vicious individual who would stun his wife and then shoot her execution style." Doc #1-2 at 34 (citing Strickland at 694, 698-699). But petitioner is not prejudiced under Strickland merely because evidence creates a negative image of him. Rather, petitioner is prejudiced if "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 US at 695. Because the stun gun evidence was admissible, the jury's level of doubt would be no

different had trial counsel objected. Further, an evidentiary finding that petitioner did not use the stun gun in the crime would not entitle petitioner to relief because it would not bear on the prejudice prong of Strickland.

The superior court's conclusion that "[p]etitioner has not sustained his burden that his trial counsel failed to provide the reasonably effective assistance required under Strickland" was not objectively unreasonable because petitioner has failed to show prejudice here. 28 USC § 2254; Williams, 529 US at 409.

3

Petitioner claims that trial counsel was ineffective for failing to investigate the lethal bullet's trajectory and failing to conduct a trigger pressure test to measure the murder weapon's capacity for accidental discharge. The superior court found "Petitioner has not sustained his burden that his trial counsel failed to provide the reasonably effective assistance required under Strickland" for this claim. In re Timothy Gregory Holmes, No 05CRWR677518, slip op at 2.

Petitioner claims that the murder weapon discharged accidentally when he reached for his wife as she attempted to leave the house. Doc #1-2 at 37. Petitioner claims his trial counsel was ineffective for failing to reconstruct the crime scene in an effort to contradict the prosecution's theory that petitioner intentionally shot his wife in the back of the head. Doc #1-2 at 37-38. In particular, petitioner contends that "[i]t appears from the facts that these two theories would yield a different bullet trajectory." Doc #1-2 at 37-38. Beyond this, petitioner does not explain how remapping the bullet trajectory could have refuted the prosecution's

13

theory of intentional killing given that petitioner shot the victim in the back of the head at point-blank range. This argument, therefore, does not give rise to "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 US at 695.

Next, petitioner argues that a "ballistics expert may have been able to perform a 'trigger-pressure' test on the .22 caliber handgun to determine the pressure necessary to fire the weapon, which would have substantiated Petitioner's testimony." Doc #1-2 at 37 (citing LE vol I Ptn at 7 (Jacobson Decl at ¶ 12)). Petitioner's proffered evidence only suggests that a ballistics expert could perform a trigger-pressure test, but not whether results of that test would dispute testimony given at trial that the murder weapon could not go off on its own. Doc #21: RT vol III at 705. Because no evidence is offered to as to what a trigger-pressure test would show, the court cannot find that the trial counsel committed error in not putting forth a ballistics expert. Petitioner has also failed to show that even if a trigger-pressure test could have shown that the murder weapon could have been fired accidentally, that showing would give rise to a reasonable probability that "the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 US at 695. Further, an evidentiary finding could not usefully bear on the prejudice prong of Strickland.

The superior court's conclusion that "[p]etitioner has not sustained his burden that his trial counsel failed to provide the reasonably effective assistance required under Strickland" was not objectively unreasonable because petitioner has failed to show prejudice here. 28 USC § 2254; Williams, 529 US at 409.

14

**B**

Petitioner also claims that his trial counsel was ineffective for failing to object to the prosecution's theory that petitioner used a stun gun in his wife's murder and to the admissibility of evidence that he: did not commit suicide; abused his wife and had committed disability fraud. Doc #1-2 at 39, 41-42. The superior court found "[p]etitioner has not sustained his burden that his trial counsel failed to provide the reasonably effective assistance required under Strickland" for this claim. In re Timothy Gregory Holmes, No 05CRWR677518, slip op at 2.

Petitioner devotes his argument to a criticism of trial counsel's performance and the prosecution's questioning of petitioner during cross-examination. See Doc #1-2 at 40-44. Petitioner's showing of prejudice, however, amounts to conclusory statements with no reference to supporting evidence. See Doc #1-2 at 41 ("Trial counsel's failure to object caused Petitioner to be prejudiced and to be denied the right to effective assistance of counsel."), 44 ("The failure to investigate and present evidence to refute the prosecution's allegations denied Petitioner his right to effective assistance of counsel.").

The superior court's conclusion that "[p]etitioner has not sustained his burden that his trial counsel failed to provide the reasonably effective assistance required under Strickland" was not objectively unreasonable because petitioner has failed to show prejudice here. 28 USC §2254; Williams, 529 US at 409.

\\

\\

\\

15

## C

Petitioner claims his appellate counsel was ineffective for failing to appeal the admission of hearsay testimony from petitioner's mother-in-law that he threatened and abused his wife. Doc #1-2 at 49, 53. Specifically, he contends that Hansken's testimony that petitioner spat in his wife's face, put gum in her hair, put a gun to her head and choked her until she "saw stars" was inadmissible hearsay. RT vol III at 619, 623-24. The superior court found "that prejudicial ineffective assistance of appellate counsel has not been established" for this claim. In re Timothy Gregory Holmes, No 05CRWR677518, slip op at 3.

As with trial counsel's assistance, petitioner devotes his discussion to appellate counsel's performance but does not demonstrate that, had appellate counsel presented the omitted issue to the appellate court, a reasonable probability existed that the appellate court would have overturned petitioner's conviction. Doc #1-2 at 49-54. The superior court's conclusion "that prejudicial ineffective assistance of appellate counsel has not been established" was not objectively unreasonable. 28 USC §2254; Williams, 529 US at 409.

As there is no showing of prejudicial error, it is unnecessary for the court to address petitioner's argument about the applicability of Crawford v Washington and Giles v California to this claim. Doc #1-2 at 49-54 (citing 541 US 36 (2004)); Doc #19 at 1-4 (citing 128 S Ct 976 (2008)).

\\
\\
\\

16

D

The Fresno County superior court did not address the issue of cumulative error, although the petitioner raised the claim in his brief to that court. See Doc #21: Denial to Return to Writ of Habeas Corpus filed October 15, 2005 at 53; Cal Pet at 63. Because there is no reasoned state court decision on that issue, the court independently reviews the record to assess petitioner's claim of accumulated error. Himes v Thompson, 336 F3d 848, 853 (9th Cir 2003).

Petitioner has not established that he has been prejudiced by accumulated error. As discussed above, all of petitioner's IAC claims are individually without merit because petitioner fails to show prejudice or because valid tactical reasons explain trial counsel's actions. Without error, there can be no contribution to the accumulation of prejudice. See Alcala, 334 F3d at 883. Accordingly, the claim based on accumulated error is DENIED.

IV

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge